2018V00421/JMA/jw
CRAIG CARPENITO
United States Attorney
By: JORDAN M. ANGER
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
Tel: (973) 645-2829
Jordan.Anger@usdoj.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Hon. |
| v. | : | Civil Action No. 19- |
| **$152,471.00 IN UNITED STATES CURRENCY,** | : | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |
| | : | |
| **Defendant *in rem.*** | | |

Plaintiff the United States of America, by its attorney, Craig Carpenito, United States Attorney for the District of New Jersey, for its verified complaint (the "Complaint") alleges, upon information and belief, as follows:

## I. NATURE OF THE ACTION

1. This action is brought by the United States of America seeking the forfeiture of $152,471.00 in United States currency seized from Jose Enrique Polanco on or about January 15, 2018 in Newark, New Jersey (hereinafter referred to as the "Defendant in rem").

2. The Defendant in rem is subject to seizure and forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6), which subjects to

forfeiture all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title 21, Subchapter I, of the United States Code, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of Title 21, Subchapter I, of the United States Code.

## II.  JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a).

4. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the District of New Jersey and pursuant to 28 U.S.C. § 1395(b), because the Defendant in rem was seized in the District of New Jersey.

5. The Defendant in rem is being held on deposit by the United States Marshals Service ("USMS") for the District of New Jersey in the USMS Seized Asset Deposit Fund account at the Federal Reserve Bank in New York, New York.

## III.  FACTS

6. The New Jersey Division of the Drug Enforcement Administration ("DEA"), Enforcement Group 2, along with other federal law enforcement agencies (hereinafter, "law enforcement") is involved in an investigation of a Dominican Republic-based drug trafficking organization (the "DTO") that has been distributing multi-kilogram quantities of heroin and cocaine in the New

York Metropolitan Area.  As part of its investigation, law enforcement has also investigated the methods the DTO uses to launder the narcotics proceeds back to the Dominican Republic.

7.  During the course of the investigation, a confidential source ("CS"), who had specific knowledge about this DTO and some of the money laundering methods that it used, was developed.  The DEA utilized the CS to communicate with Jose Enrique Polanco ("Polanco") regarding the operations of the DTO.  The CS is a paid informant for the DEA and has provided accurate reliable information about Polanco and the DTO.

8.  In January 2018, the CS provided information that Polanco worked for the DTO as a money courier responsible for transporting large amounts of the DTO's illegal drug proceeds out of the United States.  The CS stated that the DTO used Polanco because he had no criminal record and he is also a United States citizen.

9.  According to the CS, Polanco usually transported the U.S. currency from the New York metropolitan area to Costa Rica because the DTO believed that flights to the Dominican Republic garnered more attention from law enforcement since the Dominican Republic is known to be a source location for the importation of illegal drugs.  The DTO therefore instructed Polanco to fly from the United States to Costa Rica in order to evade law enforcement scrutiny.  Once in Costa Rica, Polanco either handed off the U.S. currency to other individuals for transportation to the Dominican Republic, or continued on and transported the currency to the Dominican Republic himself.

10. In addition, the CS later learned from Polanco that the U.S. currency transported to Costa Rica is used to purchase cocaine.  After the U.S. currency arrives and the cocaine is paid for, the cocaine is then shipped to the New York and New Jersey area at some point thereafter.  The cocaine is shipped to the New York and New Jersey area via vegetable and fruit exports from Costa Rica.

11. On January 12, 2018, the CS informed law enforcement that Polanco was going to be flying into the New York metropolitan area from the Dominican Republic later that same date.  The CS further stated that the purpose of Polanco's trip to the United States was to collect approximately $150,000 to $200,000 in illegal drug proceeds for the DTO.  After collecting the United States currency, Polanco was going to transport the money from the United States to Costa Rica for the DTO.

12. That same date, DEA learned that Polanco was scheduled to arrive at Newark Liberty International Airport ("Newark Airport") in Newark, New Jersey at 6:45 p.m. on United Airlines flight number 1625 from the Dominican Republic.

13. The next day, on January 13, 2018, law enforcement learned that Polanco had a flight scheduled on January 15, 2018 to San Jose, Costa Rica departing from Newark Airport.  Polanco was scheduled to leave Newark Airport at approximately 5:00 p.m. via United Airlines flight number 1222.  Polanco had booked a return flight for this trip for three days later on January 18, 2018 from San Jose, Costa Rica to Newark Airport.

14. A search of travel records has determined that Polanco booked United Airlines flight number 1222 from Newark Airport to San Jose, Costa Rica on October 25, 2017 under the same reservation as the October 28, 2017 flight from San Jose, Costa Rica to Newark Airport and a flight from Newark Airport to the Dominican Republic on July 13, 2018.

15. On January 15, 2018, at approximately 1:00 p.m., law enforcement established surveillance on an apartment in West New York, New Jersey, which was believed to be Polanco's residence, in anticipation of Polanco departing for the airport.

16. At approximately 2:10 p.m., law enforcement observed Polanco depart the residence carrying a medium-sized roller suitcase. Law enforcement continued to surveil Polanco as he departed the area and drove to another residence in Weehawken, New Jersey, where he was picked up by another vehicle and driven to Newark Airport.

17. At approximately 3:00 p.m., law enforcement observed Polanco exit the vehicle and enter Newark Airport with his suitcase at Door 1 on the top level of Terminal C. At Newark Airport, law enforcement observed Polanco check his suitcase at the United Airlines ticketing desk at approximately 3:04 p.m., and then proceed to security for his flight.

18. At approximately 4:07 p.m., members of the U.S. Customs and Border Protection Newark Outbound Enforcement Team (the "CBP officers") approached Polanco at the jet way. The CBP officers then asked Polanco about any U.S. currency he may be transporting with him on his flight to Costa Rica.

Polanco informed the CBP officers that he was transporting approximately $2,000.00 out of the United States.

19. The CBP officers then advised Polanco that, in accordance with Title 31, United States Code, Section 5316, federal law requires anyone transporting over $10,000.00 in U.S. currency out of the United States to declare such funds. Polanco then declared verbally, and in writing via CBP Form 503, that he was transporting $2,300.00 out of the United States.

20. The CBP officers subsequently conducted a search of Polanco's checked suitcase, which led to the discovery of large amounts of U.S. currency hidden in two separate bags contained within the suitcase. One portion of the currency was discovered inside a computer bag and the other portion of the currency was discovered inside the lining of a duffel bag.

21. The CBP officers then presented Polanco with the U.S. currency that had been discovered in his suitcase. In response to being shown the U.S. currency, Polanco stated that the U.S. currency was his gambling money.

22. The CBP officers then seized the U.S. currency, the Defendant in rem, which had been hidden in Polanco's suitcase.

23. At approximately 5:30 p.m., during a follow-up interview with members of the DEA and Homeland Security Investigations, Polanco reiterated that the U.S. currency hidden in his suitcase was his and that it was his gambling money. Polanco further stated that he was going to Costa Rica to visit his girlfriend, and that he was bringing the money to gamble with while he was in Costa Rica.

24. When asked how much money was in his suitcase, Polanco stated that it was approximately $150,000.00. When Polanco was asked if he had any receipts or documentation to show how he obtained the money, he stated that he did not.

25. Polanco further stated that his sole employment was as a driver for Uber, and that he had been driving for Uber since approximately the spring of 2017, less than one year prior to the seizure.

26. Polanco then stated that he did not want to talk to the investigators about the currency or about the seizure, at which time the questioning ended.

27. Polanco was processed and released that same day, but missed his flight. Although he was instructed regarding how to reschedule his flight to Costa Rica, Polanco never did so.

28. An official count of the Defendant in rem determined that it consisted of $152,471.00. The $152,471.00 consisted of the following denominations: 1 $1.00, 121 $20.00, 875 $50.00, and 1,063 $100.00.

29. The DEA later initiated administrative forfeiture proceedings against the Defendant in rem. On or about February 13, 2018, Patrick J. Brackley, Esq. filed a claim of ownership on behalf of Polanco contesting the forfeiture with DEA. The claim consisted of a notarized affidavit from Polanco stating that he is the owner of the Defendant in rem. To date, Polanco has not provided any proof of ownership of the U.S. currency.

30. A review of Polanco's travel records shows that shortly before the January 15, 2018 seizure, on October 6, 2017, Polanco began flying from the

New York Metropolitan area to San Jose, Costa Rica on a regular basis.  On October 6, 2017, Polanco flew from Newark Airport to San Jose, Costa Rica.  However, on October 10, 2017, Polanco returned to the United States from the Dominican Republic.  Just two days later, on October 12, 2017, Polanco again flew from Newark Airport to San Jose, Costa Rica.  On October 18, 2017, Polanco then flew from San Jose, Costa Rica to Newark Airport.  After that trip, Polanco traveled to San Jose, Costa Rica again on October 25, 2017 and November 30, 2017, returning to the United States within four days after each flight.  For the final trip prior to the January 15, 2018 seizure, Polanco traveled to San Jose, Costa Rica on December 17, 2017, and returned to United States on January 12, 2018 from the Dominican Republic.  This amounts to five trips to Costa Rica in approximately three months.  Although the final trip was lengthy, the first four trips lasted an average of four and a half days.

31. A review of Polanco's travel records also shows extensive travel between the New York metropolitan area and the Dominican Republic from January 8, 2016 through August 24, 2017, prior to the January 15, 2018 seizure.  During this approximately nineteen month time period, Polanco boarded approximately eighteen outbound flights from the United States to the Dominican Republic.

32. The frequency of Polanco's travel, destinations, and the short length of most of his trips is consistent with that of a money courier.  The travel between the United States and Costa Rica also corroborates the information the CS provided to the DEA.

33. According to a Department of Labor database search in the State of New Jersey, Polanco's last reported wages in New Jersey were $3,243.63 in the first quarter of 2012.

### IV. **CLAIM FOR FORFEITURE**

34. The allegations contained in paragraphs 1 through 33 of this Complaint are incorporated herein and made part hereof.

35. As a result of the foregoing, the Defendant in rem is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), because the Defendant in rem constitutes money furnished or intended to be furnished in exchange for a controlled substance or is proceeds traceable to an exchange of moneys or other things of value furnished in exchange for a controlled substance in violation of Title 21, Subchapter I, of the United States Code.

WHEREFORE, the United States of America requests that the Clerk of the Court issue a warrant for the arrest and seizure of the Defendant in rem pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, which the plaintiff will execute upon the Defendant in rem pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c); that notice of this action be given to all persons who reasonably appear to be potential claimants to the Defendant in rem; that the Defendant in rem be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and disbursements in this action; and that the Court grant such other and further relief it deems just and proper.

Dated:  Newark, New Jersey  CRAIG CARPENITO
       November 15, 2019  United States Attorney

                                         *s/Jordan M. Anger*
                                         By: JORDAN M. ANGER
                                         Assistant United States Attorney

## **VERIFICATION**

I, Leeanna Cañuelas, hereby verify and declare under penalty of perjury that I am a Special Agent with the Drug Enforcement Administration, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except that, as to those matters herein stated to be alleged on information and belief, I believe them to be true.

The sources of my knowledge and the grounds of my belief include the official files and records of the United States, information supplied to me by other law enforcement officers, and my own investigation of this case.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Dated this 14th day of November, 2019.

_____
Leeanna Cañuelas, Special Agent
Drug Enforcement Administration

2018V00421/JMA/jw
CRAIG CARPENITO
United States Attorney
By: JORDAN M. ANGER
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
Tel: (973) 645-2829
Jordan.Anger@usdoj.gov

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Hon. |
| **Plaintiff,** | : | Civil Action No. 19- |
| v. | : | |
| | | **WARRANT FOR ARREST** |
| **$152,471.00 IN UNITED STATES CURRENCY,** | : | *IN REM* |
| | : | |
| **Defendant *in rem*.** | | |

**TO ANY OFFICER OF THE UNITED STATES DEPARTMENT OF JUSTICE, THE DRUG ENFORCEMENT ADMINISTRATION, AND/OR ANY OTHER DULY AUTHORIZED LAW ENFORCEMENT OFFICER:**

WHEREAS, a Verified Complaint for Forfeiture *in Rem* has been filed on November 15, 2019 in the United States District Court for the District of New Jersey, alleging that the defendant property, namely $152,471.00 in United States Currency, is subject to seizure and forfeiture to the United States for the reasons set forth in the Complaint;

WHEREAS, the defendant property is currently in the possession, custody, or control of the United States;

WHEREAS, in these circumstances, Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure (the "Supplemental Rules"), directs the Clerk of the Court to issue a Warrant for Arrest *in Rem* for the defendant property; and

WHEREAS, Rule G(3)(c)(i) of the Supplemental Rules provides that the Warrant for Arrest *in Rem* must be delivered to a person or organization authorized to execute it, who may be an agent with the United States Department of Justice or any other United States officer or employee; someone under contract with the United States; or someone specially appointed by the court for that purpose.

YOU ARE, THEREFORE, HEREBY COMMANDED to take such steps as are necessary to arrest and detain the defendant property, including, if appropriate, serving a copy of this warrant on the custodian in whose possession, custody, or control the property is currently found; and

YOU ARE FURTHER COMMANDED to use whatever means may be appropriate to protect and maintain the defendant property in your custody until further order of this Court.

IN WITNESS WHEREOF, I, the Clerk of the United States District Court for the District of New Jersey, have caused the foregoing Warrant for Arrest *In Rem* to be issued pursuant to Rule G(3)(b)(i) of the Supplemental Rules.

Dated: _____          _____
                                Clerk of the Court

                        By:     _____
                                Deputy Clerk

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
$152,471.00 in United States Currency

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jordan M. Anger, Assistant U.S. Attorney
United States Attorney's Office, 970 Broad St., Suite 700
Newark, New Jersey 07102    Tel.: (973) 645-282

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [X] 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. 881
Brief description of cause:
Forfeiture of property related to controlled substances offenses

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE Esther Salas
DOCKET NUMBER 19-CR-588

DATE: 11/15/2019
SIGNATURE OF ATTORNEY OF RECORD: /s/ Jordan M. Anger

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____